In the Matter of the Application of the CITY OF NEW
YORK, Appellant and Respondent, Relative to Acquir-
ing Title to Real Property for the Improvement of the
Waterfront on Upper New York Bay between Simon-
son Avenue, Clifton and Arrietta Streets, Tompkins-
ville, in the Borough of Richmond.

STATEN ISLAND RAILWAY COMPANY et al., Respondents
and Appellants.

New York city — eminent domain — condemnation proceed-
ings — title — grants or patents to lands under water — ruling
that patentees held in fee proper — plan of improvement need
not be considered in valuing property taken — right to moor
vessel to dock does not require finding of easement in adjoining
parcel of land under water over which vessel might rest — lands
under water within projected boundary lines of streets —
finding of fee in patentees subject to easement of streets proper
— conditions in certain grants that city may acquire interest
of patentees upon payment of costs of lands and improvements
may be enforced by city — not violative of Statute of Per-
petuities — award to lessee for value of unexercised option to
purchase improper.

1. Upon a review of the statutes under which were made grants or
patents to lands under water on the east shore of Staten Island, some
of which contained no express restrictions or limitations, while others
recited that they were made for commercial purposes, upon condition

that within a specified time the grantee would construct docks for the promotion of commerce, and still others were made for the beneficial enjoyment of the grantee, as well as for the purposes of commerce, it must be held that where the grant or patent merely recites that it is for purposes of commerce, the patentees and grantees, despite this recital, take unrestricted titles, subject to such regulations as the State in its sovereign capacity may make for the general regulation of commerce and navigation, and that even where the grant or patent is subject to a condition subsequent that the land will be used for purposes of commerce, the patentees or grantees are not thereby restricted, without other evidence of intention, to the construction of public docks, but may build private wharves and warehouses within the limits of the bulkhead lines, since these too are helpful in promoting the commerce of the State. As to grants of land on conditions subsequent, the State alone can enforce such conditions and the fee remains in the grantee until divested by the State. A ruling, therefore, in condemnation proceedings, instituted by the city of New York to acquire lands for waterfront improvement, that the grants or patents to lands under water were held by the claimants and their predecessors in fee, was proper. (*Harper* v. *Williams,* 110 N. Y. 260, distinguished; *Thousand Islands Steamboat Co.* v. *Visger,* 179 N. Y. 206, limited.)

2. A contention that it was error for the trial justice to ignore the plan of improvement in valuing this property cannot be sustained. It was never intended that the plan of harbor improvement should be a restriction or regulation upon private ownership and furthermore it is evident that the plan was to apply only after the city acquired title.

3. The fact that the trial justice, in fixing an award, stated that he assumed the claimant had a right to moor vessels on both sides of a pier to the extent of fifty feet, does not sustain a contention that thereby the court found an easement in an adjoining parcel, which came within ten feet of the pier, so as to require allowance, in valuing such adjoining parcel, for such easement. All that was found was that the owner of the dock had the privilege of mooring vessels thereto though they might rest over the adjoining owner's land under water. (*Jenks* v. *Miller,* 14 App. Div. 474, 480, distinguished.)

4. Section 83 of the charter of the city of New York (L. 1897, ch. 378), granting in fee to the said city such lands and soil covered with water as are embraced within the projected boundary lines of any street intersecting the shore line, grants no fee to lands already conveyed under patent by the State. There is, however, the common-law easement which carries a street running to high-water mark out over patented lands when they shall be filled in. A finding of the fee in the claimants subject to an easement for the extended streets was, therefore, proper.

5. Conditions in certain of the grants of land under water, placed therein pursuant to section 86 of the charter of the city of New York (L. 1897, ch. 378), and providing that the city may at any time thereafter acquire the interest of the patentee in the premises by paying the amount paid to the State together with the expenses incurred by the patentee in acquiring the patent and the value of the improvements on the premises, may be enforced by the city. The agreement could not be avoided by the mere transfer of the property by the grantee to third persons, nor does it offend against the Statute of Perpetuities Awards, therefore, were properly reduced to bring them within the terms and conditions upon which the patentees had received their grants.

6. The reduction of an award to a claimant, by an amount paid to its tenant for the value of its unexercised option of purchase contained in the lease, was erroneous, where the lease provided that it should " cease and come to an end " upon the taking of the demised premises by the city of New York under the right of eminent domain. The option alone gave the lessee no interest in the real estate and in any event it terminated with the lease.

*Matter of City of New York ( Upper New York Bay)*, 219 App. Div. 383, 387, modified.

*Matter of City of New York ( Upper New York Bay)*, 215 App. Div. 204, 438, affirmed.

(Argued May 10, 1927; decided July 20, 1927.)

CROSS-APPEALS, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 22, 1927, which modified and affirmed as modified a judgment of Special Term making awards for property taken in condemnation proceedings for dock purposes along the eastern shore of Staten Island, bringing up for review an interlocutory judgment determining title to certain streets.

*George P. Nicholson*, Corporation Counsel (*Henry W. Mayo* of counsel), for city of New York, appellant and respondent. The courts below erred as matter of law in valuing the parcels mentioned below on the theory that the claimants thereof were the unrestricted owners of said parcels in fee simple absolute. (*People* v. *N. Y. & S. I. Ferry Co.*, 7 Hun, 105; 68 N. Y. 71; *Town of Brook*

*haven* v. *Smith,* 188 N. Y. 74; *Tiffany* v. *Town of Oyster Bay,* 234 N. Y. 15.) The courts below erred in holding that the plan of the dock department of March 27, 1919, which was approved by the commissioners of the sinking fund May 8, 1919, imposed no restriction on the claimants of the parcels taken in this proceeding in improving their property with piers and wharves. (*Appleby* v. *City of New York,* 271 U. S. 364; *People* v. *N. Y. & S. I. Ferry Co.,* 68 N. Y. 71; *Matter of City of New York* [*Ely Avenue*], 217 N. Y. 45; *Matter of Public Service Commission* [*In re Flatbush Avenue Extension*], 217 N. Y. 61; *Lincoln Trust Co.* v. *Williams Bldg. Corp.,* 229 N. Y. 313.) The court below erred in valuing the parcels as being in the unrestricted ownership of the claimants. (*People* v. *N. Y. & S. I. Ferry Co.,* 68 N. Y. 71; *Thousand Islands Steamboat Co.* v. *Visger,* 179 N. Y. 206.) The court erred in awarding the alleged full unincumbered fee value to the Stapleton Dock and Warehouse Corporation for parcels because the court decided that those parcels were subject to an easement fifty feet in width in favor of the Consumers Coal and Ice Company for the passage and mooring of vessels on the north side of the pier. (*Appleby* v. *City of New York,* 271 U. S. 364; *Matter of Daly,* 29 App. Div. 286; *Consumers Coal & Ice Co.* v. *Stapleton Dock & Warehouse Corp.,* 181 App. Div. 388.) The Appellate Division erred in holding that the city of New York did not acquire title in fee under section 83 of the New York charter to so much of the lands under water within the projected lines of Simonson avenue, Vanderbilt avenue, Hannah street and Arrietta street as had not been granted by the People of the State of New York prior to the date upon which section 83 of the charter took effect. It erred in holding that the respondent Staten Island Railway Company owned title in fee to said lands under water on October 11, 1919. (*Matter of Joralemon Street,* 146 App. Div. 594; 204 N. Y. 677; *Matter of Main Street* [*City Island*], 216 N. Y. 67; *Buffalo*

v. *D., L. & W. R. R. Co.*, 190 N. Y. 84; *People* v. *Lambier*, 5 Den. 9; *Smith* v. *Bartlett*, 180 N. Y. 360; *Knickerbocker Ice Co.* v. *42nd St., etc., Ferry Co.*, 176 N. Y. 408; *People* v. *N. Y. & S. I. Ferry Co.*, 68 N. Y. 71.) The Appellate Division erred in holding that the city of New York had no right, title or interest in and to the land under water within the projected lines of Hannah street by reason of the closing of Hannah street on May 16, 1912. (*Matter of City of New York* [*Piers 8 to 11*], 228 N. Y. 140.) The Appellate Division properly reduced the award for parcels 3 and 4, the amount paid for them to the State of New York, because in the grant from the People of the State of New York, under which title is claimed, the grantees covenanted and agreed that neither they nor their successors or assigns would demand, claim or be entitled to receive any other or greater compensation for the premises granted, in case the premises were taken by the city of New York, than the amount which the grantees had paid the State of New York for said grants, together with the expenses of obtaining the grants and the value of any improvements erected thereon, and also because they further agreed that the city of New York could at any time in the future purchase the premises granted for the amounts paid the State, plus the value of any improvements. (*Lawrence* v. *Fox*, 20 N. Y. 268; *Williams* v. *Mayor, etc., of N. Y.*, 105 N. Y. 419; *Matter of Mayor, etc., of N. Y.*, 135 N. Y. 253; *Pond* v. *New Rochelle Water Co.*, 183 N. Y. 330; *Smyth* v. *City of New York*, 203 N. Y. 106; *Rigney* v. *N. Y. C. & H. R. R. R. Co.*, 217 N. Y. 31; *Matter of City of New York* [*Piers 8 to 11, North River*], 228 N. Y. 140; *Kingsland* v. *Mayor, etc., of New York*, 110 N. Y. 569; *Dumherr* v. *Rau*, 135 N. Y. 219.) The Commissioners of the Land Office had power to insert the clause under discussion in the grants. (*Sage* v. *Mayor, etc., of N. Y.*, 154 N. Y. 61; *Matter of City of New York*, 168 N. Y. 134; *People* v. *Woodruff*, 39 App. Div. 123; 166 N. Y. 453; *People* v. *Wainwright*, 237 N. Y.

407; *Matter of Benedict* v. *Lunn,* 244 N. Y. 373.) The clause in question does not violate the statute against perpetuities. (*Matter of Wilcox,* 194 N. Y. 288; *Blakeman* v. *Miller,* 136 Cal. 138; *Hollander* v. *Central, etc., Metal Co.,* 109 Md. 131.)

*A. S. Gilbert* and *Royal E. T. Riggs* for Staten Island Railway Company et al., respondents and appellants. Nothing in any of the letters patent conveying any of the lands under water restricted the grantee or its successors to the erection of a public dock to which the public could resort upon payment of statutory fees. (*People* v. *Steeplechase Park Co.,* 218 N. Y. 459; *Appleby* v. *City of New York,* 271 U. S. 364; *Appleby* v. *Delaney,* 271 U. S. 403; *Matter of Benedict* v. *Lunn,* 244 N. Y. 373; *People* v. *Wainwright,* 237 N. Y. 407; *Wetmore* v. *Brooklyn Gas Co.,* 42 N. Y. 384; *Duryea* v. *Mayor,* 62 N. Y. 592; 92 N. Y. 477; *Towle* v. *Remsen,* 70 N. Y. 303; *Langdon* v. *Mayor,* 93 N. Y. 129; *Williams* v. *Mayor,* 105 N. Y. 419.) The plan of the dock department, dated May 8, 1919, upon which this condemnation proceeding is based, imposed no restriction upon respondents' use of the property taken. (*Yates* v. *Milwaukee,* 10 Wall. 497; *Greenleaf Johnson Lumber Co.* v. *Garrison,* 237 U. S. 251; *Sherman* v. *Sherman,* 30 Atl. Rep. 459.) The court below correctly determined that the city of New York had no title to any lands under water in the proceeding, even if Simonson avenue, Vanderbilt avenue, Hannah street and Arrietta street each intersected the shore line on January 1, 1898. (*People* v. *Wainwright,* 237 N. Y. 407.) The court below erred in the intermediate order in its findings of fact that Simonson avenue and Vanderbilt avenue, respectively, intersected the shore line on January 1, 1898, and in its conclusions of law that the lands under water within the projected lines of such streets were burdened with street easements in favor of the city on October 11, 1919, the date of the taking. (*Saltzsieder* v. *Saltzsieder,*

219 N. Y. 523; *Matter of Wallace Avenue,* 222 N. Y. 139; *Smith* v. *Brooklyn Union El. R. R. Co.,* 193 N. Y. 335; *Barnes* v. *Midland R. T. Co.* 218 N. Y. 91; *Dinkel Co.* v. *Tarrytown,* 177 App. Div. 742; *Leray* v. *New York Central R. R. Co.,* 226 N. Y. 109; *Ives* v. *Van Anken,* 34 Barb. 566; *Craig* v. *Wells,* 11 N. Y. 315; *West Point Iron Co.* v. *Reyment,* 45 N. Y. 703; *Hinkle* v. *Stevens,* 165 N. Y. 171; *Beardslee* v. *New Berlin Light & Power Co.,* 207 N. Y. 34.)

*Albert B. Boardman* and *Edwin J. Freedman* for Stapleton Dock and Warehouse Corporation et al., respondents and appellants. The court correctly construed the grants in evidence with respect to the property of these respondents. (*Bardes* v. *Herman,* 144 App. Div. 772; 207 N. Y. 745; *People* v. *Steeplechase Park Co.,* 218 N. Y. 459; *People* v. *N. Y. Transit & Terminal Co., Ltd.,* 118 Misc. Rep. 686; 206 App. Div. 711; *Abbott* v. *Curran,* 98 N. Y. 665; *People* v. *American Sugar Refining Co.,* 98 Misc. Rep. 703; 182 App. Div. 212; *People* v. *D. & H. Co.,* 213 N. Y. 194; *Appleby* v. *City of New York,* 271 U. S. 364; *Appleby* v. *Delaney,* 271 U. S. 403.) The plan adopted by the city authorities imposes no restrictions upon the best and most available use which could be made of the premises. (*Williams* v. *Mayor, etc., of New York,* 105 N. Y. 419; *Forster* v. *Scott,* 136 N. Y. 577; *Matter of City of New York* [*Ave. D*], 200 N. Y. 536; *Appleby* v. *Delaney,* 271 U. S. 403; *Matter of City of New York* [*Delancey St.*], 120 App. Div. 700; *Matter of City of New York* [*7th Ave.*], 196 App. Div. 451.) The properties of these claimants were not subject to easements claimed to be appurtenant to the adjoining pier. (*Appleby* v. *City of New York,* 235 N. Y. 351.) Equity and justice require that so much of the order of the Appellate Division appealed from by Stapleton Dock and Warehouse Corporation should be reversed and that the final and tentative decrees entered at Special Term awarding to said corporation the sum of $533,921.06 should be affirmed. An option or privilege to purchase

does not constitute an interest in real estate. (*Mathews Slate Co.* v. *New Empire Slate Co.,* 122 Fed. Rep. 972; *Prout* v. *Roby,* 15 Wall. [U. S.] 471; *Cornell Andrews Smelting Co.* v. *Boston,* 209 Mass. 598; *Benedict* v. *Pincus,* 191 N. Y. 377; *McGregor* v. *Ireland,* 86 Kan. 426; *Rivers* v. *Oak Lawn Sugar Co.,* 52 La. Ann. 762; *Hopwood* v. *McCausland,* 120 Iowa, 218; *Milwaukee Mechanic Ins. Co.* v. *Shea & Son,* 123 Fed. Rep. 9; *Ide* v. *Leiser,* 10 Mont. 5; *Corr* v. *Hoffman,* 219 App. Div. 278.) All the rights of the lessee, either as such or as optionee, except its right to compensation for improvements (about which there is no dispute) were terminated by the institution of this proceeding by the city of New York. (*Poillon* v. *Gerry,* 179 N. Y. 14.)

*Francis P. O'Connor, Edwin De T. Bechtel, Sidney W. Davidson* and *Edward W. Murphy* for Atlantic Mutual Insurance Company, respondent and appellant. In making the grant of 1903 to the Atlantic Mutual Insurance Company, the Commissioners of the Land Office were without power to impose a restriction upon the grant in favor of the city of New York. (*Matter of City of New York* [*West 205th St.*], 240 N. Y. 68; *People* v. *Schermerhorn,* 19 Barb. 540; *Knickerbocker Ice Co.* v. *Schultz,* 116 N. Y. 382; *Forster* v. *Scott,* 136 N. Y. 577; *Downes* v. *Elmira Bridge Co.,* 41 App. Div. 339; *India Wharf Brewing Co.* v. *Brooklyn Wharf & Warehouse Co.,* 59 App. Div. 83; *Appleby* v. *City of New York,* 271 U. S. 364; *Williams* v. *Mayor, etc., of New York,* 105 N. Y. 419; *People ex rel. City of New York* v. *Woodruff,* 39 App. Div. 123; 159 N. Y. 536; *Matter of Benedict* v. *Lunn,* 244 N. Y. 373; *People* v. *Wainwright,* 237 N. Y. 407.) The Appellate Division and the trial court did not err in refusing to value the property acquired on the theory advanced by appellant city of New York. (*Matter of Benedict* v. *Lunn,* 244 N. Y. 373; *People* v. *Wainwright,* 237 N. Y. 407; *Appleby* v. *City of New York,* 271 U. S. 364; *Matter*

of *City of New York* [*38th & 39th Streets Ferry*], 155 App. Div. 905; 209 N. Y. 524; *Abbott* v. *Curran*, 98 N. Y. 665; *Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 574; *De Lancey* v. *Piepgras*, 138 N. Y. 26; *Sanders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75.)  The court did not err in holding that the dock department plan of March 27, 1919, was not binding on these owners.  (*Appleby* v. *Delaney*, 271 U. S. 403; *Forster* v. *Scott*, 136 N. Y. 577; *Williams* v. *Mayor, etc., of New York*, 105 N. Y. 419.)

*Frank H. Hiscock* and *John G. Clark* for Edward W. Thompson et al., respondents and appellants.  The Appellate Division committed error in reducing the sum of $83,353.30 awarded by the trial court for taking parcel No. 4 to the sum of $2,057.26 on the ground that appellants were limited to this latter amount by the clause contained in the grant to their predecessor in title.  (*Thousand Island, etc., Co.* v. *Visger*, 179 N. Y. 206; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *Appleby* v. *City of New York*, 235 N. Y. 351;  *Cole* v. *Hughes*, 54 N. Y. 144; *Miller* v. *Clary*, 210 N. Y. 127; *Maurer* v. *Friedman*, 197 N. Y. 248; *Rochelle Park Assn.* v. *Ensinger*, 138 App. Div. 81.)  If the optional contract to convey, unlimited in time of performance, were otherwise valid and binding upon appellants it would be void as violating the rule against perpetuities.  (*Barton* v. *Thaw*, 246 Penn. St. 348; *Woodall* v. *Bruen*, 85 S. E. Rep. 170; *Henderson* v. *Pell*, 103 Kan. 422; *Winsor* v. *Mills*, 157 Mass. 362; *Skeen* v. *Clinchfield, etc., Co.*, 119 S. E. Rep. 89; *Starcher Bros.* v. *Duty*, 61 W. Va. 373; *Hugel* v. *Habel*, 132 App. Div. 327.)  The city of New York had no right to adopt a plan for the improvement of the water front which would practically destroy the rights which these respondents had acquired.  (*Appleby* v. *City of New York*, 271 U. S. 364.)

*Samuel Silbiger* for Greater New York Dock and Warehouse Company, respondent.  Respondent's option to

buy the property condemned constitutes property within the purview of section 969 *et seq.* of the New York charter under which the condemnation proceedings in the instant case were had. (*Haskin* v. *Ryan*, 75 N. J. Eq. 330; *Ringling* v. *Smith River Development Co.*, 48 Mont. 467; *Rockport Lime Co.* v. *Leary*, 133 App. Div. 379; 203 N. Y. 469; *Lewis* v. *Bollinger*, 115 Misc. Rep. 221.) Respondent was properly awarded compensation for its right or interest in property taken in these condemnation proceedings. (*Monongahela Navigation Co.* v. *United States*, 148 U. S. 312.) Respondent's option, although contained in a written lease, is a separable and distinct contract from the contract of lease, and is unaffected by the condemnation clause contained in the lease and survives the termination of the lease. (*Matter of City of New York* [*Pier 38, East River*], 168 N. Y. 254; *Poillon* v. *Gerry*, 179 N. Y. 14; *Clark* v. *Long Island Realty Co.*, 126 App. Div. 282; *Raffety* v. *Scoffield*, L. R. 1 Ch. 937; *Green* v. *Lowe*, 22 Beav. 625; *Edwards* v. *West*, L. R. 7 Ch. Div. 858; *Pyke* v. *Northwood*, 1 Beav. 152; *Mathew Slate Co.* v. *New Empire Slate Co.*, 122 Fed. Rep. 972; *Prout* v. *Roby*, 82 U. S. 471.) The court committed no error and adopted no erroneous theory in fixing and determining the amount of compensation to be paid for the parcels taken, and the contentions of the appellant the city of New York that the property was to be valued as restricted for purposes of commerce and by the plan adopted for improvement by the city of New York and by reason of section 844 of the New York charter, are repugnant to the clauses of the Federal and State Constitutions prohibiting the taking of property without due process of law. (*Thousand Island Steamboat Co.* v. *Visger*, 179 N. Y. 206; *Harper* v. *Williams*, 110 N. Y. 260; *Matter of Jacobs*, 98 N. Y. 98; *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271; *Connoly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Appleby* v. *City of New York*, 271 U. S. 364.)

*Vincent L. Leibell* and *Richard L. Deely* for Consumers Coal and Ice Company, respondent. The title of the Consumers Coal and Ice Company is the equivalent of an absolute fee simple title with unrestricted use. (*People* v. *N. Y. & Staten Island Ferry Co.*, 68 N. Y. 71; *Williams* v. *Mayor*, 105 N. Y. 419; *Bardes* v. *Herman*, 144 App. Div. 772; 207 N. Y. 745; *Appleby* v. *City of New York*, 235 N. Y. 351; *Abbott* v. *Curran*, 98 N. Y. 665; *Matter of State of New York* [*39th St. Ferry*], 154 App. Div. 954; 209 N. Y. 524; *People* v. *American Sugar Refining Co.*, 98 Misc. Rep. 703; 182 App. Div. 212; *People* v. *Steeplechase Park Co.*, 218 N. Y. 459.) The "Commerce Grant" theory has no application. (*Woodruff* v. *Havemeyer*, 106 N. Y. 129; *International Hide Co.* v. *New York Dock Co.*, 93 App. Div. 562; *The Allen Wilde*, 264 Fed. Rep. 291; *Sheldon* v. *Kerr S. S. Co.*, 200 N. Y. Supp. 276.) The fair market value of claimant's property now condemned is in no way lessened or affected by the plans of the dock department of March 27, 1919, approved by the sinking fund commission on May 8, 1919. (*Matter of Rogers Avenue*, 29 Abb. [N. C.] 361; *Matter of Avenue D*, 200 N. Y. 536; *Williams* v. *Mayor*, 105 N. Y. 419; *Forster* v. *Scott*, 136 N. Y. 577.) The trial court, in making the award herein, and the Appellate Division, in affirming said award, properly assumed that this claimant had a legal right to moor and berth vessels both on the north and south sides of " Brady's Pier " to the extent of fifty feet north and fifty feet south of the physical pier structure as erected. (*Matter of Public Service Commission* [*Montague St.*], 224 N. Y. 211; *New York Dock Co.* v. *Flinn O'Rourke Co., Inc.*, 107 Misc. Rep. 190; 200 App. Div. 871; 234 N. Y. 126.)

*Charles Lamb* for Hugo Jaburg, respondent. Title was vested in respondent in fee simple, subject only to the right of navigation. (*People* v. *Steeplechase Park Co.*, 218 N. Y. 459; *Appleby* v. *City of New York*, 271 U. S.

364; *Matter of Benedict* v. *Lunn*, 244 N. Y. 373; *Abbott* v. *Curran*, 98 N. Y. 665.)

*Montague Lessler* for American Dock Company, respondent.

*Isaac E. Bermant* and *Henry Herz* for Patrick G. Tighe, as executor of Catherine Tighe, deceased, respondent.

CRANE, J.   This proceeding was instituted by the city of New York, acting by the commissioner of docks, to acquire certain lands and lands under water on the east shore of Staten Island, in the borough of Richmond, city of New York, between the center line of Arrietta street on the north, the pierhead line established by chapter 898 of the Laws of 1895 on the east, the southerly line of Simonson avenue produced to said pierhead line on the south, and the shore line on the west, for the improvement of the water front by the erection of wharves and piers and a mariginal street all to be in accordance with a plan for the improvement adopted by the commissioner of docks of the city of New York on March 27, 1919, and approved by the commissioners of the sinking fund May 8, 1919.   The property is over a mile in length north and south, and about a quarter of a mile in width east and west, containing 7,606,623.99 square feet of land and land under water, of which about one-seventh, or 1,052,735 square feet, is filled land, the rest being navigable waters of the bay of New York.

Title to the property acquired in this proceeding vested in the city of New York on October 11, 1919, by resolution of the commissioners of the sinking fund, adopted pursuant to power contained in section 822 of the charter.

After the various claimants had filed their claims, proof of title and damage was had before Mr. Justice FABER at a Special Term of the Supreme Court, Kings county,

the trial proceeding at intervals lasting over two years. There are twenty-six parcels shown on the damage map. Final judgment was entered March 13, 1925, and on appeal to the Appellate Division was affirmed with certain modifications hereinafter referred to. The appeal to this court is by permission of the Appellate Division, and brings up also for review an interlocutory judgment passing upon the title to certain streets modified on appeal by the Appellate Division, whose opinions are reported in 215 Appellate Division, 204 and 438. In this court the city is both appellant and respondent, as some of the claimants have appealed from the modifications made by the Appellate Division.

The city appeals from the ruling that the grants or patents to the land under water were held by the claimants and their predecessors in fee. The valuation was placed upon these lands upon this basis, whereas the city claims that the grants merely gave to the claimants the right or privilege to erect docks for public use, and to collect wharfage according to the rates fixed by law. If the city is right in this particular, the valuations upon all the property here in question were fixed entirely too high, and upon a fundamentally wrong rule of damage. This is the city's principal point on appeal. The corporation counsel insists that the true theory on which all the property should be valued is that it was derived from grants for commerce which only permitted the erection of open or unshedded piers and for the use of which only the statutory rates of wharfage, cranage and dockage, provided for by sections 859 to 863 of the city charter could be collected. The trial justice found that the grants contained no restriction upon absolute title, and valued the land and the land under water accordingly.

The principal grants referred to in this proceeding are known as the Gore, Vanderbilt, Corson, St. Andrews Church, Van Duzer patents obtained very early in the history of this State. All the claimants traced their

title back to these patents, and in order to pass intelligently upon the city's appeal, it is necessary to look at the laws under which they were made, and the language of the grants themselves.

Chapter 67 of the Laws of 1786 authorized the Commissioners of the Land Office to grant " such and so much of the lands under water of navigable rivers as they shall deem necessary to promote the commerce of this State."

Chapter 74 of the Laws of 1813 contained the same words of power, " Provided always that no such grant shall be made to any person whatever other than the proprietor or proprietors of the adjacent lands."

Chapter 199 of the Laws of 1815 affected Staten Island, and read: " That the powers of the Commissioners of the Land Office granted by the fourth section of the Act hereby amended, be and the same are hereby extended to the lands under water on navigable lakes and to the lands under water adjacent to and surrounding Staten Island, provided that no grant be made in pursuance hereof, shall interfere with any rights of the corporation of the city of New York, nor extend more than five hundred feet into the water from low-water mark."

There was nothing in the words of these statutes to prohibit the Commissioners of the Land Office from granting a fee or an unrestricted title unless such limitation be found in the words " to promote the commerce of this State." The patents to much of this land followed in the years 1816, 1817 and 1818. That to Cornelius C. Corson is dated February 21, 1817, and by it the People of the State " do give, grant and confirm unto Cornelius C. Corson " the land under water described " together with all and single the rights, hereditaments and appurtenances to the same belonging or in any wise appertaining, to have and to hold the above described and granted premises unto said Cornelius C. Corson, his heirs and assigns, as a good and indefeasible state of inheritance

forever." The patent to John Gore is dated March 1, 1818, and reads: " The people of the State of New York * * * do give, grant and confirm unto John Gore " the land described " Together with all and singular the rights, hereditaments and appurtenances to the same belonging or in any wise appertaining. To Have and to Hold the above described and granted premises unto the said John Gore, his heirs and assigns, as a good and indefeasible estate of inheritance forever, on condition nevertheless that Cornelius C. Corson, his heirs and assigns forever shall have the privilege of hauling and fishing with a seine on the beach fronting the above described and granted premises."

The grant to Abraham Van Duzer, dated January 20, 1816, and to the Richmond County Turnpike Company, dated April 3, 1816, are in similar words. The grants, therefore, which were made shortly after the passage of the law of 1815, as here given, show that the Commissioners of the Land Office attempted at least to convey full beneficial enjoyment to the patentees, and to grant the land under water described in the patents in fee. Neither the statute nor the grants contained the restrictions claimed by the corporation counsel. The grant of the land in fee may promote the commerce of the State as well as a restrictive grant. The cases hereafter referred to by me have decided this.

Chapter 283 of the Laws of 1850 gave to the Commissioners of the Land Office the power to grant in perpetuity or otherwise the lands under the waters " to promote the commerce of this State, or proper for the purpose of beneficial enjoyment of the same for the adjacent owner." Many of the patents subsequently granted contained the words, " for the beneficial enjoyment of the patentee," and I take it that as to these there can be no question about the passing to them of all the right of the State to the lands under water except as to the regulatory powers in behalf of commerce.

(*People* v. *Steeplechase Park Co.*, 218 N. Y. 459.) It is true that the Simonson grants, made in 1860 and 1861, did not contain these words, but the grant was made for the purpose of promoting the commerce of the State, and granted to Jeremiah Simonson, as executor, certain land under water, described as beginning at high-water mark, reserving the right in the People to enter upon and use the lands until the same have been actually appropriated and applied to the purposes of commerce by erecting a dock thereon, and that if the dock is not erected within three years, the grant shall cease and determine and become void.

We, therefore, find that as to these grants, some of them contained no express restrictions or limitations, while others recited that they were made for commercial purposes, upon condition that within a specified time the grantee would construct docks for the promotion of commerce, and that still others coming along later in years were made for the beneficial enjoyment of the grantee, as well as for the purposes of commerce.

No particular object would be gained by quoting from all of these grants, as I think this summary is adequate to present the point of inquiry.

The corporation counsel seems to make no point regarding the difference in language of these various grants, his point being, as I understand it, that all of them were limited to the right of erecting public docks, and that none of them conveyed a fee or unrestricted title. This claim is advanced as to the Corson and Gore grants, as well as to the others. We need not pause, therefore, to differentiate the grants.

That the Legislature by the acts of 1813 and 1815 gave power to the Commissioners of the Land Office to grant more than mere public dockage rights is quite apparent, to my mind, when we read their subsequent action, chapter 232 of the Laws of 1835. By this act they did limit the power of the Commissioners, clearly

indicating that it had not been so limited before, or else showing that the Legislature knew how to use language which would permit merely a restricted right. The pertinent part of the statute read as applicable to the East river and Long Island sound: "This act or the act referred to in the preceding section, shall confer upon the said Commissioners no other power than to authorize the erection of such dock or docks, as they shall deem necessary to promote the commerce of this State, and the collection of a reasonable and accustomed dockage from persons using such dock or docks, and the Legislature may at any time regulate the same in such manner as they shall think proper."

This restriction upon the power of the Commissioners was removed by chapter 283 of the Laws of 1850, which provided: "The commissioners of the land office shall have power to grant in perpetuity or otherwise, so much of the lands under the waters of navigable rivers or lakes, as they shall deem necessary to promote the commerce of this state, or proper for the purpose of beneficial enjoyment of the same by the adjacent owner, but no such grant shall be made to any person other than the proprietor of the adjacent lands, and any such grant that shall be made to any other person shall be void."

None of the grants or patents here in question were made under the law of 1835, as far as I can ascertain.

In 1857 and 1878 the Legislature established the bulkhead line for the properties here in question, according to which these patentees or their successors had the right to fill in the land under water out to the bulkhead line. After fixing the line according to certain charts, section 88 of the Laws of 1878 provided: "It shall be lawful for the owners of piers or bulkheads constructed or hereafter to be constructed, or owners of land under water granted by the state of New York, on the Staten Island side of the harbor of New York, to extend or

2

construct piers or bulkheads to the exterior lines of piers and bulkheads, respectively fixed and established by this act.''

One-seventh of the land here condemned is filled in land, and as to this there can be no question as to fee ownership, and that the grantees and their successors have the right to maintain on the property their plants, buildings and other structures. (*Williams* v. *Mayor, etc., of N. Y.,* 105 N. Y. 419, 430.) This fact confines the claim of the city to those lands under water which have not been filled in.

The Gore patent was the subject of litigation in *People* v. *N. Y. & S. I. F. Co.* (68 N. Y. 71). Judge ANDREWS, of this court, wrote the opinion, which he starts by considering the rights acquired by John Gore under his patent from the State to the lands under water on the eastern shore of Staten Island. The words of this grant are the same as I have given above, in referring to the Gore patent. The question in the case was whether the Legislature, by chapter 763 of the Laws of 1857, fixing the bulkhead and pier lines, and the space between piers, was binding upon the owners of this grant so that in building their docks and piers they would have to comply with it. This court held that the act was the exercise by the State of governmental control of the waters, above the land granted, as a public highway, because the grant to Gore was subject to this right of sovereignty. The act of 1857 prohibited the erection of piers beyond the bulkhead line without leaving an intervening water space of 100 feet. The defendant was violating this provision. In arriving at this decision, however, the court had occasion to refer to Gore's title, which was thus subject to the reserve power of the State and regulation by Congress, and it said: '' The grantee acquires the title to the soil and the State cannot annul the grant, and the grantee, by virtue of his proprietary interest, can exclude any other person from the permanent occupation

of the land granted, and wharves and piers erected by
the grantee upon the land embraced in the grant, are
not *per se* a nuisance.  But the State does not, by a
grant made under the act of 1813, divest itself of the
right to regulate the use of the granted premises in the
interest of the public and for the protection of commerce
and navigation.  The grant is subordinate to the para-
mount right of the public, and it is one of the important
functions and duty of the State to protect public highways
against obstruction and encroachment to the injury of
the people."

In *Abbott* v. *Curran* (98 N. Y. 665) this court, referring
to similar grants from the State, approved this ruling
of the lower court: " The lands mortgaged were granted
by the State, and in such grant it was recited that the
grant was made for commercial purposes only, and for
the benefit of commerce.  But this language in the grant
did not impose either a condition precedent or subsequent,
or any restriction upon the absolute title."

The city of New York presented this same point to
this court in *Matter of City of New York (38th St. Ferry)*
(209 N. Y. 524).  There was no opinion written in this
court nor in the Appellate Division (154 App. Div. 954),
but a reference to the Appeal Book (No. 2954 Court of
Appeals Cases, Brooklyn Law Library) will show that the
title of the grantee was passed upon by the Special Term
(page 704) and that the city in its brief in this court
claimed that the grantees from the State had merely the
right to erect a dock and fill in, but had no title in fee.

This court evidently considered the grants in that case
as being unrestricted.  Unsuccessful attacks were also
made upon the Vanderbilt patent in *Bardes* v. *Herman*
(144 App. Div. 772), and upon the Swan patent, in
*People* v. *New York Transit & Terminal Co., Ltd.* (118
Misc. Rep. 686; affd., 206 App. Div. 711).

Two cases are relied upon by the city to sustain its
contention: *Harper* v. *Williams* (110 N. Y. 260) and

*Thousand Island Steamboat Company* v. *Visger* (179 N. Y. 206). The opinion of Judge DANFORTH in the *Harper* case refers to no authorities, but in a brief statement relies upon the terms of the grant which gave not land, but merely the power and authority to erect docks and to collect dockage to be regulated by the Legislature. This patent is entirely dissimilar from those in this case.

The *Thousand Island Steamboat* case has been and must be limited and confined to the facts. The wharves involved, running out into the St. Lawrence river, had been built for some fifty years, and had been down to the time of the commencing of the action practically open to the general use by all of the steamers and boats engaged in navigating the river, for a compensation charged by the wharf owners. When patents were granted, and the lessees under the patent attempted to exclude the steamboats from the use of the dock, this long-continued public user was a significant fact in the case. This court said: " In this case, the fact is that there was a general use of these docks, upon payment of a compensation charged, both before and after the grants of 1883. There was not, necessarily, a dedication of the properties to the public; but that they had been open to public commercial uses is of significance. A dock may be private, or public, though owned by an individual, and the use it has been put to, at least, furnishes the basis for an inference of the owner's intention in its construction and maintenance. Therefore, we have evidence of what the owners held out as the intended use of the docks and their application for a grant of the land by the state, with the terms of the grant itself, permit of no other conclusion than that the wharves were intended to be, and are there, for the purposes of commerce."

It is true that there are other statements in the opinion which would appear to support the view here taken by the city, and *Harper* v. *Williams* is cited as an authority,

but when we consider the limitations of the patent in the *Harper* case, and the intention of the parties which the court read into the grant in the *Visger* case, we are not inclined to consider either of these cases as conclusive authorities for the interpretation of such grants as we now have before us.

It may be that there has been more or less uncertainty regarding this law of State grants, and that there have been, if not conflicting decisions, at least conflicting statements, regarding the power of the Commissioners of the Land Office under the early laws and the grants made by them. If the matter were coming before us for the first time, it might be that we would give to the words " to promote the commerce of this State," some limitation, but in view of the authorities which we have quoted and the action which apparently has been taken under them, and the titles which have passed since such grants have been made, we feel that we are now justified in holding in accordance with these authorities that where the grant or patent merely recites that it is for purposes of commerce, the patentees and grantees, despite this recital, take unrestricted titles, subject, of course, to such regulations as the State in its sovereign capacity may make for the general regulation of commerce and navigation, and that even where the grant or patent is subject to a condition subsequent that the land will be used for purposes of commerce, the patentees or grantees are not thereby restricted, without other evidence of intention, to the construction of public docks, but may build private wharves and warehouses within the limits of the bulkhead lines, since these too are helpful in promoting the commerce of the State.

*People* v. *Steeplechase Park Co.* (218 N. Y. 459) and *People* v. *Wainwright* (237 N. Y. 407) dealt with grants for beneficial enjoyment made after the act of 1850, above referred to; and *Appleby* v. *City of New York* (271 U. S. 364) was based upon a full and complete grant

in fee from the city of New York as interpreted by that court, from which flowed all of the subsequent rights of the grantee.

Some of these grants, as above stated, were made on condition that the grantee would build docks, fill in the land and construct piers within a certain number of stated years; otherwise, the grants were to be void. The State alone could enforce these conditions; the fee title remained in the grantee until divested by action of the State. (*Matter of Benedict* v. *Lunn,* 244 N. Y. 373.) If there has been a breach of the conditions subsequent to the grant the city is not at liberty to take advantage of that omission. The State only can claim the right to vacate the patent for breach of condition subsequent, and then only in a direct action or proceeding for that purpose. (*Archibald* v. *N. Y. C. & H. R. R. R. Co.,* 157 N. Y. 574, 581.)

By chapter 898 of the Laws of 1895 additional rights were given to riparian owners and patentees to extend and construct piers not exceeding 150 feet in width with spaces between them of at least 100 feet and to bulkhead to lines established by the act, and they were entitled to receive upon payment additional grants of land under water. Grants were made under this act to the claimants in this proceeding, and their land has been appraised like the other lands, as being substantially unrestricted. There is nothing in the act of 1895 which restricts these grants. What we have said in reference to the acts of 1815 and 1850, and grants made under them, applies to these subsequent grants.

We, therefore, find no error in the rulings made by the trial justice upon this branch of the case.

The city also has raised the point that it was error for the trial justice to ignore the plan of improvement in valuing all of this property. As stated at the beginning of this opinion, the condemnation proceedings were taken under the provisions of the charter and a plan of the

harbor improvement adopted by the dock commissioner, and approved by the sinking fund commission. This plan, of course, was not to be carried out until the city had acquired the land. The plan, which for convenience has been superimposed upon the damage map, shows that docks 125 feet wide are to be built out to the pier line established by the Secretary of War, and that the docks are to be 300 feet apart. They are to be built in this regular fashion, irrespective of the lines of private ownership. It was never intended that this plan of harbor improvement should be a restriction or regulation upon private ownership. Under the charter of the city of New York, and prior thereto, the dock department had power of regulation. It was the reserve power of the State to which all grants were subject, as determined in *People* v. *N. Y. & S. I. F. Co.* (68 N. Y. 71). If the plan proposed had been some such regulation and intended to apply to all third parties owning shore property and lands under water, we would have a different question. The plan was only to apply, however, as is quite evident, after the city acquired title. The claim that in valuing the property which the city was to take, the trial justice should consider it as being burdened or restricted in its use by the plan adopted cannot be justified. Even if the plan were a regulation, it could not affect the docks and piers already constructed. We find no error here in refusing to consider this plan in valuing the property.

The trial justice, in fixing his award for parcels Nos. 14 and 14-a, owned by the Consumers Coal and Ice Company, said: " I have assumed that the claimant has a right to moor and berth vessels on both the north and south sides of ' Brady's Pier ' to the extent of 50 feet of the physical pier structure." The pier came out some distance from the bulkhead and bulkhead line with water to the north and south of it. No other pier under the Laws of 1857, above referred to, could be built within 100 feet of it to the north. The same provision was

contained in chapter 898 of the Laws of 1895. Even if the city of New York had the power to modify under its charter, going into effect January 1, 1898, these dock placements, it had not done so. We by no means say that the city had such power. (*Matter of Montague Street,* 224 N. Y. 211.) The northerly side of the pier came within ten feet of the southerly side of parcels 15-b and c, owned by the Stapleton Dock and Warehouse Corporation. The reason why the trial justice said that the Consumers Coal and Ice Company had the right to moor and berth vessels on this north side to the extent of 50 feet was apparently because vessels may be of that width. The corporation counsel claims that the trial justice found an easement in the adjoining land under water for the purpose of mooring vessels to the dock, and that he made no allowance for it. The trial justice gave full unincumbered fee value to the Stapleton Dock and Warehouse Corporation for parcels 15-c and 15-b, and, therefore, he could have found no such easement. By using the word "right," the trial justice gave rise to this discussion. What he meant, and all that he found was that while the distance between piers had to be maintained, the Consumers Coal and Ice Company had the privilege of mooring vessels to the north side of their dock, although the vessel might rest over the adjoining owner's land under water. We find no error here, as this was the very purpose of limiting the space between docks by law. What Judge CULLEN had to say in *Jenks* v. *Miller* (14 App. Div. 474, 480), regarding the riparian right of an upland owner at common law to build out a dock and moor vessels only in front of it, does not apply to this situation. There is no error here that requires reversal.

The final judgment, as we before stated, has brought up for review the interlocutory judgment which determined the title to Simonson avenue, Vanderbilt avenue and Hannah street. The city claimed the extension of

these streets over the land and water in fee.   The claimants claimed the fee.   The Appellate Division found the fee in the claimants subject to an easement for the extended streets.   Both sides have appealed to this court. The city's claim is based upon section 83 of the Greater New York charter, which made certain grants to the city in these words: "There is hereby granted in fee to the said city of New York, as herein constituted, in all the public streams, rivers, sounds, bays and waters of all descriptions at any and all places within said city * * * the property * * * in * * * such lands and soil covered by water, as are embraced within the projected boundary lines of any street intersecting the shore line, and which street is in public use or which may be hereafter opened for public use, extending from high-water mark out into said streams" etc.   This grant of the fee to projected streets beyond the high-water line would be perfectly good provided the State owned the land to grant to the city.   In these instances, the land had been conveyed by the patents above mentioned to the claimants long before the passage of the Greater New York charter.   Therefore, this section of the charter could grant no fee in these patented lands.   However, there was the common-law easement which carried the street running to high-water mark out over patented lands when they should be filled in.   The public had the implied right under such conditions to reach the water.   This was our decision in *Matter of City of New York (Main St.)* (216 N. Y. 67).   As to the patents granted to these claimants under the law of 1895, the same ruling would apply as to the fee if the patents were obtained prior to January 1, 1898.   If after that date, section 83 would not apply, as there would be an intervening fee ownership between the high-water line and the westerly boundary of the new grant; that is, there would be an intervening fee ownership under the old patent, and section 83 would not apply to such a

condition.   The easement, however, would be extended. We, therefore, think that the Appellate Division was correct in the disposition which it made on this intermediate appeal, and in its subsequent action regarding Hannah street, which was closed.   We also think there was evidence to sustain its findings.

We now will turn our consideration to the appeal of two claimants whose awards were substantially modified and reduced by the Appellate Division.   *First*, we will consider the case of the Atlantic Mutual Insurance Company, claimants to damage parcels 3 and 3-a, and Edward W. Thompson and others, owners of parcels 4 and 4-a. The award to the Atlantic Mutual Insurance Company for the lands under water in parcel 3 was $320,662.75. The Appellate Division reduced it to $5,878.30, and the award to Thompson for the land under water in parcel 4 was $83,353.30, which was reduced to $2,057.26.   The reduction was made because of terms contained in the grants from the State.   Both grants contained this clause:

" This grant is made and accepted upon the express covenant, terms and conditions that the City of New York may at any time hereafter acquire the interest in the premises herein described which patentee may have acquired under or by virtue of this patent upon paying to the patentee, her heirs, successors and assigns, the amount paid by said patentee to the State for the said interest in said premises, together with the expenses necessarily incurred by the patentee for the acquiring of such patent, which are hereby fixed at the sum of $350, and also the value of the improvements on said premises   *   *   *   and that the patentee, her successors and assigns, shall not demand, claim or be entitled to receive any further other or greater compensation for any interest she may have acquired under or by virtue of this patent in or to said premises or in or to the part or parcel thereof so taken by the City of New York."

This clause was inserted under authority and directions

found in section 86 of the Greater New York charter (L. 1897, ch. 378), which reads:

" If application be made to the Commissioners of the Land Office by the riparian proprietor for a grant of soil or land under water within the City of New York, as herein constituted, said Commissioners shall give notice thereof to the Board of Docks, of the city which shall examine into such application and determine whether the granting of the same will conflict with the rights of the city under this act or be otherwise injurious to the public interests of the said city, and shall report their conclusions to said Commissioners who shall insert such terms and conditions in the grant recommended by the Board of Docks as will protect the public interest of the city in respect to navigation and commerce.   The validity of any such grant or patent may be judicially determined in an action brought by and in the name of the city."

The claimants attack this limitation upon their grants in many ways, but they do not deny that the grantees received and paid for their grants with the understanding that the clauses would be complied with.   It is said that the agreement to return the purchase money does not come within the conditions which the Commissioners had the right to make, that such a condition in no way relates to navigation and commerce.   We do not think these words should have such a narrow construction.   The building and erection of docks, and the improvement of the harbor and waterways of the city of New York is in the interest of navigation and commerce.   The city of New York for years, under various acts of the Legislature and grants from the State, had been developing and improving the waterfront of the city.   The present provisions of the Greater New York charter were in the Consolidation Act of 1882 (Laws of 1882, chap. 410), and were in substance the provisions of the acts of 1871 and 1873.   These acts are set forth, so far as relevant, in *Matter of City of New York* (*Piers Old Nos. 8–11*) (228 N. Y.

140). We there said: " The intention of the Legislature to prohibit the alienation of all water front property owned by the city would seem to be included in its purpose to authorize and empower the city to obtain and continue to hold complete control of its water front as provided by the statutes."

In *Matter of Mayor, etc., of N. Y.* (135 N. Y. 253) the court said: " In 1871 the Legislature changed entirely the general system by which this duty of building bulkheads, docks and piers had theretofore been performed.

" Instead of devolving upon private owners the duty of building such structures and giving to private individuals the right to collect wharfage, a general and vast system was provided for by the act of 1871. * * *

" The adoption of the plan spoken of contemplated the purchase or erection and the possession and ownership by the city of a great number of piers to the exclusion of all private ownership."

When the Legislature, therefore, passed section 86 of the Greater New York charter, it not only must have had in mind this general policy of the State regarding the waterfront of New York city, but have intended by this enactment to further and carry it out. The words " as will protect the public interests of the city in respect to navigation and commerce," must be read in the light of this policy and of our decisions. When this is done I think it quite evident that this clause refers to the interests of the city in acquiring the property in behalf of the public for commerce and navigation. The condition or agreement, therefore, to give it back when needed by the city for this purpose was made in accordance with power conferred by this section of the charter.

The agreement, if otherwise binding, could not be avoided by the mere transfer of the property by the grantee to third persons. It does not come within that class of cases where personal covenants are held not to run with the land.

The Legislature having fixed the conditions under which these grants could be made, the city was in a position to enforce the conditions made in its favor. The ruling in *Lawrence* v. *Fox* (20 N. Y. 268) need not be resorted to for this purpose. The city of New York after all is a creature of the Legislature and has only those powers and privileges which are conferred upon it. We must read together all of these legislative acts relating to these grants under water. The Legislature has given to the Commissioners of the Land Office by the act of 1895, above referred to, the right to grant these lands under water, under which these patentees have received their title. The Legislature also in enacting section 86 of the charter, amended its previous laws by providing that on application for grants in this locality, notice shall be given to the board of docks, and the grant must be made subject to its approval and on such conditions as will protect the public interests of the city in respect to navigation and commerce. It is the act of the Legislature which has in effect put into the appellants' grants these conditions in behalf of the city of New York, and by necessary implication has authorized the city of New York to enforce them at the proper time in behalf of its public interests. Many of the State functions are passed to municipalities for enforcement, and in this particular the interest of the State and the city are one. The case of *Lawrence* v. *Fox* has no application.

Neither do we think that the Statute of Perpetuities is here violated. As the city may not exercise the right to purchase this property within two lives in being (section 42 of the Real Property Law; Cons. Laws, ch. 50), it is said that the power of alienation was suspended. The municipality and the grantees, however, are in being and could convey a fee by their united action within the meaning of this section. Cases are cited by the appellant which do hold that such an indefinite period for exercising an option is an illegal restraint upon alienation, or contrary to the

law of perpetuities. *Barton* v. *Thaw* (246 Penn. St. 348, 366) and *Winsor* v. *Mills* (157 Mass. 362) so hold, and review the English authorities bearing upon the same point. We have never gone so far in this State as to hold that an option to buy property any time within a definite period of years is a suspension of the power of alienation. Any fixed, definite time which suspends alienation is a violation of our statute which fixes two lives in being as the limit, but an option to buy does not come within the rule. (See *Blakeman* v. *Miller*, 136 Cal. 138; *Hollander* v. *Central Metal, etc., Co.*, 109 Md. 131, and a review of this question in 16 Ruling Case Law, section 300.) Considering the policy of this State, as above mentioned, it seems to me that these grants were simply permissions given to the grantees to use the land under water until such time as the city should want it. The alienation of real property is governed in this State by legislative enactments. Section 42 of the Real Property Law, regarding the suspension of the power of alienation, as well as the law of perpetuities could be modified or wiped out altogether in the discretion of the Legislature. It has been suggested, therefore, that as the charter of the Greater city of New York is but an act of the Legislature, section 86, and those provisions dealing with the acquirement and development of the city waterfront property necessarily modified any doctrine of perpetuities as applicable to the situation here. What force or application there may be in the arguments upon this point we need not now consider.

We are, therefore, of the opinion that the Appellate Division was correct in reducing these awards to bring them within the terms and conditions upon which the patentees had received their grants.

There is one error which has been committed below which must be corrected. It comes here on the appeal of the Stapleton Dock and Warehouse Corporation, which had given a lease to the New York Dock and Warehouse

Company, Inc., for a portion of its property. An award for damage parcels 13 and 13-a was fixed at $533,921.06. This was reduced by the Appellate Division by giving out of the amount $100,176.06 to the Greater New York Dock and Warehouse Company, Inc., for the value of its option of purchase contained in the lease. The lease was made on the third day of July, 1918, to the Johnson Shipbuilding, Repair and Dry Dock Company, Inc., which has been succeeded by the Greater New York Dock and Warehouse Company, Inc.. The term was for twenty-one years, commencing the first day of January, 1919, and contained these provisions:

" The tenant further agrees that should the whole of the demised premises be taken by the Government of the United States, the State of New York, the City of New York or any government or power whatsoever, or by any corporation under the right of eminent domain, or should the whole of said demised premises be condemned by any Court, City, County, State or Governmental authority or office, department or bureau of the City, State or United States, that then and in that event this lease shall cease and come to an end, and in such event the tenant shall have the right to remove all improvements placed by it upon the demised premises as heretofore provided in paragraph ' 12 ' for such removal at the expiration of the term, provided the tenant shall have duly performed all the covenants of this lease on its part to be carried out and performed up to the time of such removal, or if the buildings and improvements may not be so removed or the tenant elects not to so remove them, then the tenant may receive from the body or authority taking the property, the value of such buildings and improvements as under the terms of this lease it might have removed, as personal property and not as part of the real estate, and in no event shall the tenant receive any portion of any award made to the landlord, but its sole rights shall be limited to a separate claim for the

value of the aforesaid buildings and improvements as personal property and the tenant hereby waives and relinquishes all other claim or claim for damages against said landlord or against the body, authority, party or parties acquiring the said premises, and the tenant shall not claim any other compensation or damages."

Also this further covenant:

" At any time prior to the first day of January, 1922, the tenant, upon giving the landlord sixty days' written notice to that effect, shall have the option to purchase the demised premises and all improvements thereon, for the sum and at the rate of Twelve hundred and fifty dollars ($1250) per front or linear foot, measured on Front Street, which said purchase price shall be paid in cash, or at any time prior to the 1st day of January, 1924, the tenant upon giving like notice, shall have the option to purchase the demised premises and any and all improvements thereon for the sum and at the rate of Fifteen hundred dollars ($1500) per front or linear foot, measured on Front Street, which said purchase price shall be paid in cash. If such option be exercised and such written notice given, the tenant shall forthwith deposit with the landlord the sum of Ten thousand dollars ($10,000) in cash on account of the purchase price and the title shall close and deed be delivered and the balance of the purchase price paid not more than thirty days thereafter."

In *Matter of Mayor, etc., of New York* (168 N. Y. 254) it was held that where tenants leased property expressly subject to the contingency that the landlord might by proceedings under a statute in behalf of a municipality be deprived of the title or right to the possession of the property, they are not entitled to have the value of their unexpired terms ascertained and deducted from the total award to the landlord in such proceedings representing the value of the property at the time it was made. The tenant in this case had not exercised its option at the time title was taken by the city, October 11, 1919. In

fact, it has never exercised its option.   The option alone gave the lessee no interest in the real estate.   He became a purchaser only upon the due exercise of the option. (*Cornell-Andrews Smelting Co.* v. *Boston & Prov. R. R.*, 209 Mass. 298.)   The reason for this is apparent.   If the lessee had exercised his option prior to condemnation, he would be bound by his election as well as the owner. Therefore, if the premises should bring on condemnation less than the option price, the tenant nevertheless would be obliged to pay the difference, or the full option price to the owner.   The reverse would also be true.   The tenant would be entitled to receive the value of the award, although the option price were less.   In other words, by the exercise of the option, the rights and obligations of the owner and the lessee became mutually binding. The New York Dock and Warehouse Company, Inc., claims that this option is one-sided, and only binding on the owner, and frankly states that if the award had been less than its option price, it would have been under no obligation to buy the property or take the award, and pay the owner the difference.   It has the privilege, so it claims, of waiting until the award is made, and then, finding that the amount is in excess of the option price, claim an election and the right to the difference, which in this case is over $100,000.   Such a thing cannot be; it is not only unreasonable, but not within the terms and conditions of the lease itself.   That provides that in the event of the city of New York taking the premises under the right of eminent domain, the lease shall cease and come to an end.   This terminates the option as well as the lease.   If the tenant had an option to renew the lease instead of to purchase, this certainly under *Matter of Mayor, etc., of New York* (168 N. Y. 254), would terminate under this clause.   Why should not the option to buy terminate as well as the option to extend the term?   And again, as the option was to be renewed at

3

different rates, according to the time of its exercise, at which rate would the option be figured? All these various considerations lead to the conclusion that the unexercised option terminated with the lease.

In this particular the judgment of the Appellate Division must be modified, and the finding of the trial judge in favor of the full award being made to the Stapleton Dock and Warehouse Corporation affirmed.

We have not been able to review all the points raised by the city and some of the appellants in this opinion, because to do so would extend it beyond all reasonable limits. We have carefully examined them all, and agree with the Appellate Division in its disposition of them.

Upon the appeal of the Stapleton Dock and Warehouse Corporation the order of the Appellate Division reducing by the sum of $100,176.06 the award to said appellant and directing the payment of such sum to the Greater New York Dock and Warehouse Company, Inc., should be reversed and the award of the Special Term of $533,921.06 in favor of the Stapleton Dock and Warehouse Corporation affirmed, with costs to said appellant against the Greater New York Dock and Warehouse Company, Inc. Upon the other appeals herein the order of the Appellate Division should be affirmed, with costs to the respondents.

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN and KELLOGG, JJ., concur; O'BRIEN, J., not sitting.

Ordered accordingly.