STATE OF NEW JERSEY, ACTING BY AND THROUGH H. MAT ADAMS, COMMISSIONER OF THE DEPARTMENT CONSERVATION AND ECONOMIC DEVELOPMENT, PLAINTIFF-RESPONDENT, v. NEW JERSEY ZINC CO., *ET AL.*, DEFENDANTS, AND FRED FERBER AND HEDWIG FERBER, HIS WIFE, DEFENDANTS-APPELLANTS.

Argued May 7, 1963—Decided July 30, 1963.

Mr. *John W. Griggs* argued the cause for defendants-appellants (*Messrs. Morrison, Lloyd & Griggs,* attorneys; *Mr. Griggs,* of counsel; *Mr. Bruce M. Ramer,* on the brief).

Mr. *Henry Sevrin,* Deputy Attorney General, argued the cause for plaintiff-respondent (*Mr. Arthur J. Sills,* Attorney General of the State of New Jersey, attorney).

Mr. *Joseph Keane* made a statement on behalf of defendant New Jersey Zinc Co. (*Messrs. Milton, Keane & DeBona,* attorneys).

The opinion of the court was delivered by

HALL, J. Is the holder of an option on real property which is the subject of a condemnation proceeding, not exercised before the commencement of the proceeding, entitled to be made or become a party and to participate therein? The Law Division held in the negative and the optionee's appeal to the Appellate Division was certified on our motion before argument there.

The question is a narrow one on its face and is even more limited under the facts of the case. Our decision thereon must be confined to the precise issue arising from the particular setting.

In July 1962 plaintiff (the State) instituted an action in the Law Division under the general eminent domain statute, *R. S.* 20:1–1, *et seq., R. R.* 4:92, to acquire 6,000 or more acres of forest, lake and wilderness land located principally in

Vernon Township, Sussex County, but extending in small part across the boundary into West Milford Township, Passaic County, and commonly known in total as the "Wawayanda tract." As later appeared, the acquisition was sought for state recreation and conservation purposes under the Green Acres Land Acquisition Act of 1961, *N. J. S. A.* 13:8A–1, *et seq.,* which directed the use of the eminent domain act when property could not be acquired by purchase. The complaint sought a fee simple absolute in the property to be condemned, which was described in 24 separate tracts, by the metes and bounds of each according to old deed descriptions. Defendants New Jersey Zinc Co. (Zinc) and Fred Ferber and wife (Ferber) were designated as the sole owners, and made parties, *R. R.* 4:92–2, without specification as to the ownership of each particular tract as between the two. There was in fact no joint ownership of any portion of the premises. Although not disclosed by the complaint, Ferber then owned upward of 2,000 acres, represented by the large 24th tract and some of the other smaller tracts. He held an unexcised and unrecorded option on the balance by virtue of an agreement with Zinc, the owner thereof, which will be more fully discussed shortly. Ferber was made a party solely by reason of his ownership of part of the land and not because of his option on the balance. In accordance with the statute, *N. J. S. A.* 20:1–2, the complaint demanded the appointment of three commissioners to fix the compensation to be paid for the taking of the property, including the damage, if any, resulting from such taking to any remaining property. The prescribed process issued, *R. R.* 4:92–3(a), in the form of an order to show cause why judgment appointing commissioners should not be entered, returnable in September 1962.

As far as the record before us shows, Zinc did not file any responsive pleading and has never contested the right to condemn or the appointment of commissioners. Ferber, however, filed an answer in which the option was set forth in general terms and various defenses to condemnation asserted, *N. J. S. A.* 20:1–2, with which we are not presently concerned.

These included the constitutionality of the Green Acres statute, failure of the condemnor to comply with conditions precedent prescribed therein and alleged abuse of power by the State in seeking to acquire the lands in question. A proliferation of procedural and tactical motions ensued, depositions of state officials were authorized and commenced, and the return day of the order to show cause was consequently continued several times until it and the various motions finally came on for commencement of a full-scale hearing on November 30, 1962. *R. R.* 4:85-5.

The motion then heard which gave rise to the order appealed from was made by the State which sought leave to withdraw from the action condemnation of all land owned by Ferber and to continue it only as to the property of Zinc, to file an amended complaint accordingly, and to dismiss the action as to Ferber, thereby removing him as a party in the cause. The State's theory was that, since Ferber had not exercised his option with respect to any of Zinc's land prior to the institution of the condemnation action, he had no interest therein entitling him to remain as a party and to participate in the condemnation action either in the Law Division by way of contest of the right to condemn or before the commissioners or thereafter on the matter of the compensation to be paid for the taking. This thesis was vigorously opposed by Ferber, who contended that he had a sufficient interest even as the holder of an unexercised option. He did not contest the right of the State to abandon condemnation of the portion to which he had title, pursuant and subject to authority granted to do so by *N. J. S. A.* 20:1-30. Further, in affidavit proofs submitted to the court on November 30, he showed that on the previous day he had given Zinc notice of intention to exercise the option as to that portion of the land to which he was then entitled to act under the terms of the agreement and that he intended to exercise the option as to the balance as soon as he was permitted to do so under those provisions. He further claimed that the entire 6,000 acres plus constituted in fact a single entity or property and that,

regardless of the state of the title or rights as between him and Zinc with respect to any portion thereof, he was entitled to participate fully in the action as to the entire area at least because of the matter of remainder damage resulting from the taking to that part of the property which he then owned and which was not being taken.

It may be observed that, legally, the situation was no different from that which would exist if the State had originally sought to acquire only those tracts owned by Zinc but subject to the option and Ferber had moved to intervene, see *R. R.* 4:37-1, *State v. Lanza,* 74 *N. J. Super.* 362, 370 (*App. Div.* 1962), affirmed *State by Bontempo v. Lanza,* 39 *N. J.* 595 (1963), for the same reasons advanced in support of the contention that he was entitled to remain a party and participate.

At this point more detailed reference should be made to the agreement between Zinc and Ferber. Dated March 15, 1960, it divided the whole Wawayanda tract (then owned exclusively by Zinc) for purposes of the agreement into three parcels by brief general descriptions, not by metes and bounds or deed tracts, and referred to an outline thereof on an attached map. (This map is not included in the appendix and we have no way of knowing exactly how these parcels are related to the 24 tracts set forth in the complaint beyond the general information previously mentioned.) Parcel I was described as containing approximately 2,000 acres and as "including the so-called Rough Mountain area and the southerly portion of the main area"; Parcel II, as containing approximately 2,800 acres and as "including the northerly and easterly portions of the main area"; and Parcel III, as containing approximately 1,200 acres and as "including Lake Wawayanda and Laurel Pond and the westerly portion of the main area." The agreement constituted an agreement to sell Parcel I for $200,000, title to close not later than September 15, 1960. The conveyance thereof was consummated long prior to the commencement of the condemnation action and the land included therein represents the portion of the whole area owned by Ferber at that date and which the State by its motion with-

drew from condemnation. Parcels II and III represent the land to be acquired by the action.

The agreement also gave Ferber the option until March 15, 1963 to purchase Parcel II for $300,000 and, until March 15, 1966, Parcel III for $500,000, the latter to be exercisable only after completion of the purchase of Parcel II. It provided that upon exercise of an option, the agreement then became a contract to buy and sell realty. Mechanically, exercise of an option was to be accomplished by Ferber's giving mail notice thereof to Zinc, accompanied by a payment of 10% of the purchase price, with the sale to close not less than 60 days nor more than 90 days after the date of mailing.

As we have said, on November 29, 1962, Ferber mailed Zinc notice of intention to exercise the option on Parcell II together with the requisite check for $30,000. As shown by affidavit proofs submitted when the hearing was continued on December 21, 1962, Zinc at first refused to accept the notice of exercise "until the problems raised by the condemnation proceedings have been resolved by the court." However, after this appeal was taken, Zinc advised Ferber that it had no objection to the exercise of the option or to the delivery of a deed pursuant thereto. And at oral argument before us, counsel for Zinc stated that it was ready to convey title to both Parcels II and III to Ferber upon payment of the price and to allow the latter to defend the condemnation action in his own name. However, we have not been advised that conveyance of either parcel has been made to Ferber and we must therefore treat the matter as it stood when the order under appeal was entered, i. e., the option as to Parcel II had been exercised, but the sale not consummated, and the option with respect to Parcel III remained unexercised.

We might well interpolate at this juncture that the agreement contained no express provision as to what should occur in the event either Parcel II or III became the subject of eminent domain proceedings after the contract was entered into. It does provide that in the event Zinc is unable to convey title after exercise of an option, the optionor's liability

shall be limited to a return of the 10% payment and certain other specified reimbursements. Its application to the present circumstances is certainly debatable. We cannot here determine its meaning and effect as between the parties, but it is nothing of which the State may take advantage, at least at this point in the proceeding, as it seeks to do in urging that thereby the institution of the condemnation action voided the option and any possible interest of Ferber in the proceeding, now or at any time in the future. As will be later pointed out, Zinc retains the *power* to convey, subject to the pending action, at least until there has been a taking by the State and Zinc has been divested of title.

Of prime significance is the disclosure at the hearing that Zinc conceives the appropriate value and amount payable by the State for the acquisition of Parcels II and III as of the date of commencement of the action—the criterion date, *N. J. S. A.* 20:1–9, the State not having actually taken the property before, or since, for that matter—to be the $800,000 price fixed in its agreement with Ferber and that it, therefore, was not interested in pressing for a higher amount. The State similarly disclosed that its appraisals accorded with that figure and that it was ready to pay Zinc that sum. It appears, indeed, to have actually agreed to do so. Ferber, on the other hand, contended that the land to be acquired (Parcels II and III) was worth an unspecified amount more than $800,000 and that unless he could participate in the action, the State and Zinc would consummate the matter as they desired and he would be deprived of the benefit of his option bargain. The State, of course, does not wish to pay any more for the property than the amount of its appraisals, corresponding to the Zinc-Ferber agreement price. Thus the practical background of the instant legal controversy.

The trial judge held, in accord with the position urged by the State, that since "* * * neither option was exercised at the inception of this proceeding, * * * the Ferbers had no interest in the property itself, and they are not proper or necessary parties to the proceeding once the

State abandons its action to take their property." He therefore entered the order under appeal dismissing them as parties. The order also allowed the State (this portion is not appealed from) to file an amended complaint to condemn only the property title to which, as of the date of the decision, was in Zinc (*i. e.*, that represented in effect by Parcels II and III in the Zinc-Ferber agreement), and to use a new description thereof which would run around the entire approximately 35-mile perimeter and apparently would not utilize any of the separate tract descriptions set forth in the original complaint.[1] We have not been furnished with this amendment, but only with a copy of a small-scale map which, it would seem, the new description was to encompass. It may be noted that this map does not show or tie in to Parcels II and III in the option agreement (with which, of course, the State has no direct concern). We must consequently assume that the description will not designate or refer to such parcels in any way and that the State's appraisals or evidence as to value will encompass the entire Zinc property and will not distinguish, if that is possible, between Parcels II and III. There is nothing in the record to show whether the line dividing them is a natural or only an artificial one or whether the characteristics of the land in each are similar or different, beyond the fact that the water areas are found within Parcel III. Of course, since under the option agreement, Zinc would

[1] Since the entry of the order under appeal and the dismissal of Ferber from the case, objections to the condemnation interposed by defendants County of Sussex and the Township of Vernon, which largely paralleled the substantive defenses asserted by Ferber previously summarized, have been disposed of by the trial court favorably to the State (though this disposition is not binding on Ferber if he was erroneously dismissed from the suit) and judgment entered appointing the commissioners. We are not advised that any appeal therefrom is pending. The Appellate Division, however, in connection with the instant appeal, ordered, pending the outcome hereof, that the commissioners not proceed with hearings and that the State and Zinc not enter into a consent judgment or make any other arrangements which would result in the transfer of title to the subject property to the State.

be compelled to convey them to Ferber separately and at different times, there would have to be, as far as they are concerned, either in present existence or to be later prepared, a division line by metes and bounds.

Preliminarily, the general scheme for the prosecution of eminent domain actions in the courts of this State, insofar as it has pertinency, should be recalled since the precise question before us must be decided in the light of that background. We refer to the general statute, *R. S.* 20 :1–1 *et seq.*, as procedurally implemented by *R. R.* 4 :92 and interpreted by case law. Simply and broadly stated, and at the risk of repetition of elementary knowledge, a two-step procedure is prescribed. The first, required in all cases, is an ordinary action at law in the Superior Court where the judgment sought—a final one—is the appointment of three commissioners, who shall thereafter "make a just and equitable appraisement of the [property], and an assessment of the amount to be paid by the plaintiff for the [same] and damages * * *," *N. J. S. A.* 20 :1–9, and file their report thereof in the action with the court, *N. J. S. A.* 20 :1–10. (In former times, the commissioners were not expected to hold a hearing and receive evidence as to value, but to base their award upon a view of the property and their own knowledge. In late years, however, the practice has developed of holding a formal hearing and taking full proofs.) The report so made is ordinarily not judicially reviewable. *Cf. New Jersey Turnpike Authority v. Jersey City*, 36 *N. J.* 332 (1962). Since *L.* 1953, *c.* 20, all issues raised as to the right to exercise the power of eminent domain and other like preliminary matters are to be determined in the cause before the court enters judgment of appointment, *N. J. S. A.* 20 :1–2.

The taking in the usual situation, as here, which constitutes the right to possession and the passage of title to the condemnor, occurs automatically at and upon the filing of the commissioners' report and the payment of the amount awarded to the parties entitled thereto or into court, *N. J. S. A.* 20 :1–12. (We are not concerned and do not deal with

those situations where the condemnor is authorized to and has taken physical possession in advance of the payment of compensation, see *R. S.* 20:1-29; see also, *e. g., R. S.* 27:7-22; *New Jersey Highway Authority v. Ellis,* 24 *N. J.* 1 (1957), and the taking thus occurs then although title will not pass until some later date.) Until the taking occurs, the land remains the property of the owner with power to convey to third parties, subject, of course, to the paramount right of eminent domain asserted in the pending condemnation action. *Delancey & Stockton Corp. v. Reliable Improvement Co.,* 134 *N. J. Eq.* 71, 75 (*E. & A.* 1943). And see provision for filing *lis pendens, N. J. S. A.* 20:1-4.

The second step in the procedure, a permissive one, allows the condemnor (without effect upon a prior taking or right to possession, *N. J. S. A.* 20:1-24), the owner (even though he may have received payment of the award, *N. J. S. A.* 20:1-24), or any person interested, to appeal to the Superior Court from the commissioners' report, with the right to jury trial upon demand. *N. J. S. A.* 20:1-16 and 18; *R. R.* 4:92-6 and 7. The commissioners' award is thereby rendered nugatory and the amount thereof is not even admissible evidence on the appeal. The appeal is severed from the original action and separately docketed. It constitutes a *de novo* trial on the issue of the amount of compensation to be paid by the condemnor and results in a money judgment therefor, which is subject to the same right of further appeal as any other judgment. See *N. J. S. A.* 20:1-25 and 28.

Important also is that the only issue to be determined by the commissioners and by the fact finder in event of appeal is the lump sum compensation to be paid by the condemnor for the property represented by its fair market value, *State by State Highway Com'r v. Cooper,* 24 *N. J.* 261, 268 (1957), *cert.* denied 355 *U. S.* 829, 78 *S. Ct.* 41, 2 *L. Ed. 2d* 42 (1957); *City of Trenton v. Lenzner,* 16 *N. J.* 465, 475-479 (1954), *cert.* denied 348 *U. S.* 972, 75 *S. Ct.* 534, 99 *L. Ed.* 757 (1955), plus any damages to the remaining property of the owner if the taking is only a part thereof, *N. J.*

*S. A.* 20:1–9. Those having interests in the property less than ownership or claims arising by reason of the condemnation can only be compensated by appropriate division of the fund thereby created, to the extent entitled. *State by State Highway Com'r v. Cooper, supra,* 24 *N. J.,* at *p.* 271; *New Jersey Highway Authority v. J & F Holding Co.,* 40 *N. J. Super.* 309 (*App. Div.* 1956). Such claimants may not receive separate and additional compensation, *cf. New Jersey Turnpike Authority v. Bowley,* 27 *N. J.* 549 (1958), *cert.* denied 358 *U. S.* 927, 79 *S. Ct.* 312, 3 *L. Ed. 2d* 301 (1959), as appears to be the case in some other states. For example, in Pennsylvania, the holder of an unexercised option on land condemned has been held entitled to separate compensation for loss of the value of the option beyond the amount awarded the owner for the fair market value of the property, *In re Petition of Governor Mifflin Joint School Authority,* 401 *Pa.* 387, 164 *A. 2d* 221 (*Sup. Ct.* 1960). Further, the matter of the nature and extent of the interests or claims in the property and the fund of persons other than the owner (including any disputes as to title, *R. R.* 4:92–2) are not proper subjects for consideration or even mention prior to the payment into court of the award or judgment. Such matters are determined by subsequent proceedings in the cause, *R. R.* 4:92–10 and 11.

 The final pertinent aspect of our condemnation scheme is the matter of parties defendant to the action. This phase has had but little judicial attention and we need only consider it to the extent precisely involved here. Originally the general eminent domain statute spoke, in respect to necessary parties, only of the owner (including all claimants if title was in dispute *R. S.* 20:1–5), the occupant, and persons *appearing of record* to have any interest in the property. *R. S.* 20:1–2. Since *L.* 1953, *c.* 20 and the adoption of present *R. R.* 4:92 dealing with procedural matters, the subject of parties is dealt with in this fashion: "The record owner, the occupant, if any there be, such other persons appearing of record to have any interest in the property and such persons claiming an interest therein as are known to the plaintiff shall

be made parties." *R. R.* 4:92–2. Initially we may say that it is not enough for a person merely to *claim* that he has an interest in the property in order to require that the plaintiff make him a party or to permit him to intervene on his own motion. *State v. Lanza, supra,* 74 *N. J. Super.* 362. Some reasonable legal basis must be *prima facie* shown. So Ferber's argument that his assertion of a claim of interest is in itself sufficient to require that he remain in this litigation has no merit.

The matter of parties defendant is a two-sided coin. It is important to the condemnor that he include all persons, of record or otherwise, who have or might claim any interest *in the property,* whether that interest be subordinate to that of the owner, as that of a mortgagee or lessee, paramount, as in the case of a governmental lien, or on the same plane, as with a vendee under contract of sale. This is so in order that all such interests may be forever extinguished by the condemnation. The other side of the coin involves assuring the opportunity to participate in the action to all parties with an interest in the property who could claim all or some portion of the funds ultimately created.[2] Ordinarily participation would take the form of presenting proof, or at least having the opportunity to do so, concerning the fair market value of the property in order that the award would be sufficient to satisfy the interest, if a subordinate one, or to give a person some benefit of his bargain if he stood on the same plane as the owner. Again ordinarily, such right to participate is aca-

---

[2] We do not mean to suggest that one must have been a party to the condemnation action in order to claim some portion of the fund. In many instances such a right might be created by a contractual or other relation between the owner and the claimant not giving rise to any interest in the property. In others, a claimant holding some unrecorded interest unknown to the condemnor may properly choose not to intervene or participate in the eminent domain proceeding. *Cf. Delancey & Stockton Corp. v. Reliable Improvement Co., supra,* 134 *N. J. Eq.* 71, where a vendee under contract of sale, apparently not a party to the subsequent condemnation, later made claim to a portion of the fund.

demic since it is as much to the owner's interest, if not more
so, to secure the maximum amount of compensation so that
something will remain for him after satisfaction of subordi-
nate interests. It is only in situations such as that of a vendee
under a contract of sale (where the latter seeks to establish a
higher value than the owner is interested in or willing to
press for and so representation of the vendee by the owner
under our scheme of condemnation procedure may be inade-
quate) that active participation in the case by the vendee is of
real significance. (Generally such situations can be handled
practically by the owner's agreeing to allow the vendee to de-
fend and control the action in the owner's name upon posting
security to cover any deficiency should the award turn out to
be less than the contract price.)

This leads to the matter of the essential nature
and effect of an option to purchase realty, the decisive con-
siderations in this case. Under New Jersey law, for our pur-
poses, it may be defined as a binding unilateral contract
whereby the owner offers to convey to the optionee at the
price specified in the event the latter accepts the offer by
exercising the option in strict accordance with its terms and
within the time designated. *Schlein v. Gairoard,* 127 *N. J. L.*
358, 359–360 (*E. & A.* 1941) ; *Salem County Beagle Club v.
Diggs,* 1 *N. J. Super.* 564 (*Ch. Div.* 1948) ; 22 *N. J. Practice
(Lewine, Landlord and Tenant Law)* § 951 (*3d ed.* 1962).
The owner is bound by his offer, but no obligation is imposed
upon the optionee. He has nothing but a continuing, irrevo-
cable proposal to sell him the property, which will not ripen
into anything more unless and until he exercises it, which he
may do or not entirely as he pleases. An option does not cre-
ate any interest in the land, 3 *American Law of Property* §
11.17 (1952), and in New Jersey, at least, the holder of an
unexercised option is not entitled to share in the condemna-
tion award (absent some contrary provision in the option
agreement). Therefore, there is no sound legal basis for say-
ing that he is a necessary party to a condemnation action.
Nor should he, as a general proposition, have any right to

intervene and participate in the proceeding, so long as the option remains unexercised, simply because at some future date he might decide it to be advantageous to acquire an interest by exercising the option. The authorities generally so hold, although cases from other jurisdictions in this field may not be too helpful in view of differences in the theory and procedural scheme of condemnation. See Annotation, "Right to damages or compensation upon condemnation of property, of holder of unexercised option to purchase," 85 *A. L. R. 2d* 588 (1962). See also *In re Water Front on Upper New York Bay*, 246 *N. Y.* 1, 157 *N. E.* 911, 921 (*Ct. App.* 1927), cert. denied *Greater New York Dock & Warehouse Co. v. Stapleton Dock & Warehouse Corp.*, 276 *U. S.* 626, 48 *S. Ct.* 320, 72 *L. Ed.* 738 (1928). Consequently, we conclude that, as of this date, Ferber is not entitled to remain as a party to and participant in this action with respect to the land encompassed within Parcel III of the Zinc-Ferber agreement.

When an optionee exercises his option, "* * * a mutually enforceable contract of sale arises. It is then no longer an option but a contract for the sale of real estate * * *." 3 *American Law of Property, op. cit., supra,* at *p.* 48. *Patsourakos v. Kolioutos*, 132 *N. J. Eq.* 87, 93 (*Ch.* 1942), affirmed o. b. 133 *N. J. Eq.* 37 (*E. & A.* 1943). The purchaser thereby becomes the equitable owner of the land and the remedy of specific performance becomes mutually available. *Delancey & Stockton Corp. v. Reliable Improvement Co., supra,* 134 *N. J. Eq.*, at *p.* 75. A vendee under such a contract may participate, under the New Jersey condemnation scheme, in eminent domain proceedings affecting the property and in the award, as may holders of other interests less than the fee, see *City of Newark v. Cook*, 99 *N. J. Eq.* 527 (*Ch.* 1926), affirmed o. b. 100 *N. J. Eq.* 581–584 (*E. & A.* 1927), cert. denied *McEuen v. City of Newark*, 274 *U. S.* 757, 47 *S. Ct.* 768, 71 *L. Ed.* 1337 (1927) (lessee); *Mueller v. New Jersey Highway Authority*, 59 *N. J. Super.* 583 (*App. Div.* 1960) (easement); cf. *Bergen County v. Hackensack,*

39 *N. J.* 377 (1963). He is generally entitled to the excess of the award above the purchase money. *Rappoport v. Crawford,* 99 *N. J. Eq.* 669 (*Ch.* 1926), affirmed o. b. 100 *N. J. Eq.* 587 (*E. & A.* 1927); *cf. Delancey & Stockton Corp. v. Reliable Improvement Co., supra,* 134 *N. J. Eq.,* at *p.* 75; *Bailey v. Osborn,* 80 *N. J. L.* 333 (*E. & A.* 1910).

██ An optionee who exercises his option after the institution of condemnation proceedings, thus becoming the equitable owner and acquiring the right to compel a conveyance, stands in the same legal position as one who enters into a contract to purchase the property after the action was commenced. There is nothing in the law and theory of condemnation in this State to bar such a contract or, as we have pointed out, a full conveyance of the property, prior to the taking (in the sense of the vesting of title in the condemnor), subject to the right of eminent domain. Although the question is a novel one in this state, we feel that an optionee who has thus exercised his option should have the same right to become a party to the proceeding and to participate therein as is accorded a vendee, or a grantee who receives a conveyance of the fee, subsequent to the institution of the action but prior to the taking. See *State v. Lanza, supra* (74 *N. J. Super.* 362). We find no substantial authority in any jurisdiction to support the State's argument that the commencement of the action voids an option and cuts off all right of the optionee with respect to the proceeding and we see no policy reason entitling it to prevail, particularly under the facts of this case. There is no real question here but that Ferber, on November 29, 1962, exercised his option to purchase Parcel II in accordance with the terms of the agreement. So we determine that Ferber was entitled to remain a party to this action and to participate therein as to the land included in this parcel and that the trial court's order was consequently erroneous in completely dismissing him from the case.[3]

---

[3] We are not presently required to pass upon the question of what the effect would be of a purported exercise of the option as to Parcel

The result we reach, granting Ferber the right to partici-
pate as to Parcel II but not as to Parcel III, may present
practical difficulties insofar as proof of fair market value is
concerned, since, as has been pointed out, the amended de-
scription to be used by the State, and presumably its value
evidence too, will apparently treat as a whole the property
being condemned and will not distinguish between the two
parcels. This is a matter for the trial court to work out by
instructions to the parties and the commissioners before the
latters' hearings are commenced. Perhaps the burden might
be put upon Ferber to furnish the State in advance with sep-
arate descriptions of the two parcels so that it may have an
opportunity to prepare separate valuation testimony as to
Parcel II. (The problem may become academic in view of
Zinc's statement at oral argument that it is ready to convey
both parcels to Ferber now upon payment of the agreement

III after the taking had occurred, *i. e.,* after payment into court of
the award of commissioners and the simultaneous automatic passage
of title to the State. (This matter may well be of practical impor-
tance under the procedural scheme of this State in view of the earlier
described right to appeal and trial *de novo* after such a taking.)
The authorities in other jurisdictions where different procedural
theories prevail are divided. One line makes the taking the cut-off
date, since "* * * otherwise the lessee [optionee] would have the
privilege of waiting until the award was made and then exercising
or not exercising his option according to whether or not the amount
of the award was in excess of the option price." *City of Ashland v.
Kittle,* 347 *S. W.* 2d 522, 524 (*Ky. Ct. App.* 1961). See also cases
cited in Annotation, *op. cit., supra,* 85 *A. L. R.* 2d 588, and *In re
Water Front on Upper New York Bay, supra* (157 *N. E.* 911). The
other line of authority, of which *Cullen & Vaughn Co. v. Bender Co.,*
122 *Ohio St.* 82, 170 *N. E.* 633, 68 *A. L. R.* 1332 (*Sup. Ct.* 1930) is
representative, holds that where the land has been condemned and
the optionee may no longer obtain it, he may nevertheless, by exercise
of the option, purchase the fund into which the land has been con-
verted and come into the eminent domain proceeding at that point
(with the right to participate thereafter with respect to matters not
already determined). The only expression in New Jersey which is
at all analogous leans to the first view, see *Delancey & Stockton
Corp. v. Reliable Improvement Co., supra,* 134 *N. J. Eq.,* at *p.* 76,
but we reserve the point.

price, thereby allowing Ferber to defend the entire action in his name.)

The trial court did not pass upon Ferber's further contention that he should have the right, even in the absence of the option agreement, to remain as a party and participate with respect to all of the land on the theory that the entire Wawayanda tract constitutes a single entity in fact and· so a claim could be asserted for remainder damage to his property resulting from the taking of Zinc's lands. Aside from empowering him to offer proof of the remainder damage to his land alone, participation based on this theory would be of substantial benefit only with respect to the defense of lack of power to condemn Zinc's land and the like. The argument is renewed here. The evidence is inadequate to ground a right to participate on ˙this theory. The only proof offered is an affidavit containing the insufficient, bare assertion that Mr. and Mrs. Ferber have always considered the area as a single entity. See *Ridgewood v. Sreel Investment Corp.*, 28 *N. J.* 121 (1958). Moreover, the mere hope by an owner of one tract that he might be able some day to acquire the adjoining tract ⸴is ˛not a property right and there is consequently no right to compensation or damages if the adjoining tract is condemned.

The order of the Law Division is modified and the cause remanded for further proceedings consistent with this opinion. No costs to any party.

*For modification*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.